**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WAYNE BLACK,**

        **Plaintiff,**

  v.                           **Civil Action 2:19-cv-4242
Chief Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Wayne Black, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.   BACKGROUND

Plaintiff filed his application for DIB August 17, 2015, alleging that he was disabled beginning June 1, 2013. (Tr. 134–35). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on April 4, 2018. (Tr. 31–48). On July 25, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 7–24). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on September 23, 2019 (Doc. 1), and the Commissioner filed the administrative record on December 2, 2019 (Doc. 8). Plaintiff filed her Statement of Errors (Doc. 9) on January 16, 2020, and

Defendant filed an Opposition (Doc. 10) on February 24, 2020. Plaintiff filed her Reply (Doc. 11) and Motion to Amend her Reply (Doc. 12) on March 10, 2020. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

The [Plaintiff] testified at the hearing that he previously worked for approximately 30 years driving grocery delivery trucks. He then worked for a short time after his last insurance date as a cashier at Walgreens, and stopped working due to a recurrent hernia and difficulty lifting. The [Plaintiff] testified that he also had knee pain that prevented him from standing for long periods, and a frozen shoulder that limited his ability to lift his arm "up high" or perform repetitive motions. The [Plaintiff] asserted that his doctors placed him on a "permanent" lifting restriction of 20 pounds due to his hernias. He asserted that he was unable to mow the grass or shovel snow. He estimates that he was limited to standing for 20-30 minutes at one time.

(Tr. 14).

### B. Relevant Medical Evidence

The ALJ also usefully summarized Plaintiff's medical records and symptoms:

The medical record confirms that the [Plaintiff] had a history of recurrent hernias and that he required multiple surgeries (1F/33). The record also shows that the [Plaintiff] required additional surgeries after his last insurance date and that he later developed a number of significant complications relating to his hernias (9F; 10F; 15F). However, there is limited medical evidence supporting the [Plaintiff]'s contention that his hernias caused significant problems during the period under consideration.

In November 2014, after the [Plaintiff]'s last insurance date, he complained of a bulge and lower abdominal pain at the top of his prior mesh hernia repair (1F/33). He stated that he had retired from his prior job and he was no longer lifting very much (1F/35). His physical examination showed that the [Plaintiff]'s hernia was "a little" tender. However, his abdomen was nontender and had a normal tone. The [Plaintiff] had a normal gait, and he remained able to stand without difficulty (1F/35). The [Plaintiff]'s surgeon later noted that the [Plaintiff]'s prior hernia surgery had been "many years ago" and that the [Plaintiff] had been "pain free" since that surgery, and his hernia had "not been an issue" for him (12F/1).

> The [Plaintiff] has a history of left knee pain (1F/39). In January 2013, he underwent an arthroscopic partial medial meniscectomy (1F/39). The [Plaintiff] did "reasonably well" after surgery (1F/39). He subsequently noted increase knee pain, but he experienced no locking, catching, or giving way (1F/39). Physical examination showed that the [Plaintiff] had tenderness and "minimal" crepitation, but that he remained able to fully extend both knees and flex them symmetrically, with no evidence of instability (1F/39). X-rays of the [Plaintiff]'s left knee were "unremarkable" (1F/39). He was diagnosed with chondromalacia (1F/39). In October 2013, the [Plaintiff] had a normal gait and full range of motion in all joints with no pain (1F/9). In November and December 2014, after the [Plaintiff]'s last insurance date, he continued to display a normal gait, and he remained able to stand without difficulty (1F/35). He reported "good" functional capacity, and stated that he remained able to climb a flight of stairs without any chest pain or shortness of breath (11F/1).
>
> The medical record also shows that the [Plaintiff] had a history of neck and shoulder pain with prior surgeries on his neck and shoulder (1F/ 11, 15). He was diagnosed with adhesive capsulitis or frozen shoulder of the left shoulder (1F/66). In March 2013, he underwent manipulation of the left shoulder under anesthesia in order to increase his mobility (1F/66). In October 2013, the [Plaintiff] complained of pain when he turned his neck to the extreme right (1F/9). However, his physical examination showed that he maintained full range of motion of his neck and other joints with no muscular tenderness (1F/9).

(Tr. 14–15).

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through June 30, 2014 and had not engaged in substantial gainful employment from his alleged onset date of June 1, 2013 through his date last insured of June 30, 2014.  (Tr. 12).  The ALJ determined that, through his date last insured, Plaintiff suffered from the following severe impairments: history of henna with surgical repair, history of cervical degenerative disc disease with surgery, left knee degenerative joint disease with surgery, left knee chondromalacia, adhesive capsulitis of the left shoulder, and obesity. (*Id.*).  The ALJ, however, found that through his date last insured, none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 13).

3

>As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:
>
>After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he could frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop; and frequently kneel, crouch, and crawl. He could occasionally reach overhead, and otherwise frequently reach with his left arm.

(*Id.*).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 14).

As for the relevant opinion evidence, the ALJ gave limited weight to the opinions of state agency medical consultants, Dr. Thomas and Dr. Budnik, who opined that Plaintiff's alleged impairments were not severe prior to his date last insured. (Tr. 15). The ALJ found that "the record as a whole indicates that the [Plaintiff]'s impairments would have caused limitations consistent with the above assessment. No treating or examining physician has offered an opinion that the [Plaintiff] is totally disabled or has greater limitations than those included in the above residual functional capacity assessment." (Tr. 15–16).

Relying on the VE's testimony, the ALJ concluded that, through his date late insured, Plaintiff was capable of performing his past relevant work a sales route driver, as well at other jobs that exist in significant numbers in the national economy. (Tr. 16-17). He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, at any time from June 1, 2013, the alleged onset date, through June 30, 2014, the date last insured. (Tr. 18).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff raises two overlapping assignments of error, arguing that the ALJ's analysis at Steps Four and Five of the sequential evaluation are not supported by substantial evidence because the Vocational Expert's testimony on which the ALJ relied was inconsistent with the Dictionary of Occupational Titles ("DOT"). (Doc. 9 at 5–9).

At Steps Four and Five of the sequential evaluation process, ALJs and VEs "rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A.

5

Dec. 4, 2000). Occupational evidence provided by a VE "should be consistent with the occupational information supplied by the DOT." *Id.* Where there is a conflict between the two, the ALJ "must elicit a reasonable explanation for the conflict before relying on the" VE's testimony. *Id.* To ensure this requirement is satisfied, at the administrative hearing, the ALJ will "inquire, on the record, as to whether or not there is such consistency." *Id.*

An "ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)). Instead, "[t]his obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich*, 345 F. App'x at 168; *see also O'Neal v. Comm'r of Soc. Sec.*, — F. App'x —, 2020 WL 97414, at *4 (6th Cir. Jan. 7, 2020) (same).

Here, the ALJ presented the VE with a hypothetical that accurately portrayed Plaintiff's RFC and confirmed that VE's testimony was consistent with the occupational information supplied by the DOT. (*See* Tr. 45–47). The Plaintiff, however, did not cross-examine the VE, (*see* Tr. 46–47), and his failure to do so "is not grounds for relief," *Beinlich*, 345 F. App'x at 168 (citing *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008)); *see also O'Neal*, 2020 WL 97414, at *4 (same). Nothing more was required of the ALJ, and he did not err as a result. *See O'Neal*, 2020 WL 97414, at *4; *Beinlich*, 345 F. App'x at 168; *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted) (holding that, at Step Five, VE testimony satisfies the substantial evidence requirement when it is in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments"); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The hypothetical the ALJ posed to the vocational expert was consistent with the ALJ's factual determination that Griffeth was able

6

to engage in light work and that his depression had little effect on his ability to perform basic work-related activities. The vocational expert testified that such a person could perform Griffeth's past relevant work as a code enforcement officer and scheduler. The vocational expert's testimony constituted substantial evidence to support the ALJ's determination that Griffeth was able to perform his past relevant work and was not disabled.").

But Plaintiff raises a new argument in his Reply. He argues that he submitted a post-hearing letter requesting a supplemental hearing based on certain inconsistencies between the VE's testimony and the occupational information provided by the DOT. (Doc. 13 at 2–5). The ALJ erred, in his view, by denying him a supplemental hearing, which "significantly prejudiced" his claim. (*Id.* at 5).

Plaintiff's new argument is problematic for several reasons. First, "[a] reply brief is not the proper place to raise an issue for the first time," and courts decline to consider newly raised arguments accordingly. *Osborne v. Pickaway Cty. Ohio*, No. 2:19-CV-3628, 2020 WL 1275722, at *9 n.4 (S.D. Ohio Mar. 17, 2020) (collecting cases).

Second, while Plaintiff asserts that he raised this argument to the ALJ in a post-hearing letter, the Undersigned reads the record differently. After the hearing, Plaintiff sent the ALJ a letter questioning whether the VE's testimony was consistent with the DOT; specifically, he argued that the ALJ's hypothetical asked for occupations with a medium exertional level, but the VE provided three occupations with light exertional levels. (Tr. 242). Plaintiff emphasized that, if he was limited to light exertional work, that "would make medical vocational grid rule 202.06 applicable" since he had "no transferrable skills to light or sedentary occupations." (*Id.*). He further requested a supplemental hearing to address this issue if the ALJ was not inclined to rule in his favor. (Tr. 243). In his written decision, the ALJ considered Plaintiff's post-hearing letter

7

and modified his decision accordingly. (*See* Tr. 17 ("The claimant's representative objected to this testimony after the hearing because the job is classified as light and not medium level work . . . The undersigned agrees that based on the claimant's age and the medical vocational rules, it would be inappropriate to rely on light work in determining whether an individual with the claimant's residual functional capacity could perform other jobs.")).

But now Plaintiff argues that the ALJ failed to consider the discrepancy in the VE's testimony and the DOT regarding his limited ability to reach. (*See generally* Docs. 9, 13). That is a new argument that was never raised before the ALJ. "Plaintiff's failure to raise this issue during the hearing precludes h[im] from now asserting it as a basis for relief." *Turner v. Comm'r of Soc. Sec.*, No. 2:19-CV-900, 2019 WL 5781608, at *7 (S.D. Ohio Nov. 5, 2019), *report and recommendation adopted*, No. 2:19-CV-900, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020) (collecting cases). Even if Plaintiff had raised this argument in his post-hearing letter, courts have rejected Plaintiff's argument that an ALJ errs if, after allowing a claimant to cross-examine a VE, he or she does not explicitly address newly-raised, post-hearing objections in a written decision. *See Zimmerman v. Comm'r of Soc. Sec.*, No. 1:18CV1233, 2019 WL 4736267, at *9 (N.D. Ohio Sept. 27, 2019) (collecting cases) ("Zimmerman has not provided jurisprudence that supports his argument that the ALJ had an obligation to explicitly address his post-hearing objections to the VE's testimony. Indeed, courts have rejected this argument.").

### IV.   CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   April 22, 2020                                /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE